UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

MICHELE J.,[1]

    Plaintiff,

v.

MARTIN O'MALLEY,

    Defendant.

Case No. 2:24-cv-00561-BNW

**ORDER**

       This case involves review of an administrative action by the Commissioner of Social Security denying Michele J.'s application for disability benefits under Titles II and XVI of the Social Security Act. The Court reviewed Plaintiff's Motion for Reversal and/or Remand (ECF No. 11), the Commissioner's Cross-Motion to Affirm and Response (ECF No. 13), and Plaintiff's Reply (ECF No. 14). For the reasons discussed below, the Court denies Plaintiff's Motion and affirms the Commissioner's decision.

**I.     BACKGROUND**

       On November 12, 2019, Plaintiff filed for disability insurance benefits under Title II of the Social Security Act as well as supplemental security income under Title XVI, alleging an onset date of October 21, 2019. ECF No. 9-1 at 179.[2] Plaintiff's claim was denied initially and upon reconsideration. *Id.*

       A telephonic hearing was held before Administrative Law Judge ("ALJ") Cynthia Hoover on June 23, 2021. *Id.* On August 11, 2021, ALJ Hoover found that Plaintiff was not disabled. *Id.* at 191. Plaintiff appealed that decision to the Appeals Council, which remanded the case for further proceedings. *Id.* at 200–02.

---

[1] In the interest of privacy, this opinion only uses the first name and last initial of the nongovernmental party.

[2] ECF No. 9 refers to the Administrative Record in this matter which, due to COVID-19, was electronically filed. All citations to the Administrative Record will use the CM/ECF page numbers.

On remand, a telephonic hearing was held before ALJ Hoover on March 28, 2023. *Id.* at 27. On July 12, 2023, ALJ Hoover found that Plaintiff was not disabled. *Id.* at 38. Plaintiff appealed that decision to the Appeals Council, which denied her request on February 9, 2024. *Id.* at 11. Plaintiff then commenced this action for judicial review under 42 U.S.C. § 405(g) on March 21, 2024. *See* ECF No. 1.

## II.     STANDARD OF REVIEW

Administrative decisions in Social Security disability-benefits cases are reviewed under 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which [s]he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action. . . brought in the district court of the United States for the judicial district in which the plaintiff resides." The Court may enter "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

The Commisioner's findings of fact are conclusive if supported by substantial evidence. *See id.*; *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the Court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F. 3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273,

1279 (9th Cir. 1996).

Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). When the evidence supports more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health & Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, the issue before the Court is not whether the Commissioner could have reasonably reached a different conclusion, but whether the final decision is supported by substantial evidence. *Burch*, 400 F.3d at 679. It is incumbent on the ALJ to make specific findings so that the Court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). Mere cursory findings of fact without explicit statements as to what portions of the evidence were accepted or rejected are not sufficient. *Id.* The ALJ's findings "should be as comprehensive and analytical as feasible, and where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Id.*

### A. Disability evaluation process and the ALJ decision

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected. . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The individual also must provide "specific medical evidence" in support of her claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that she can make a finding of disability or non-disability, a

determination will be made, and no further evaluation is required. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If the individual is engaged in SGA, the ALJ will make a finding of non-disability. If the individual is not engaged in SGA, then the analysis proceeds to step two.

Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities. *Id.* § 404.1520(a)(4)(ii). If the individual does not have a severe medically determinable impairment or combination of impairments, then the ALJ makes a finding of non-disability. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* § 404.1520(a)(4)(iii). If the individual's impairment or combination of impairments meets or equals the criteria of a listing and the duration requirement, then the ALJ makes a finding of disability. *Id.* § 404.1520(d). Otherwise, the analysis proceeds to step four.

However, before moving to step four, the ALJ must first determine the individual's residual functional capacity ("RFC"), which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. § 404.1560; *see also* SSR 96-8p. In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1545. To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence the ALJ must make a finding on the credibility of

the individual's statements based on a consideration of the entire case record.

Step four requires the ALJ to determine whether the individual has the RFC to perform her past work ("PRW"). 20 C.F.R. § 404.1520(a)(4)(iv). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years. The work also must have lasted long enough for the individual to learn the job and to have performed an SGA. If the individual has the RFC to perform her past work, then the ALJ makes a finding of non-disability. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

The fifth and final step requires the ALJ to determine whether the individual can do any other work considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If she can do other work, then the ALJ makes a finding of non-disability. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence demonstrating that other work exists in significant numbers in the economy that the individual can do. *Yuckert*, 482 U.S. at 141–42.

*Here*, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 21, 2019, the alleged onset date. ECF No. 9-1 at 30.

At step two, the ALJ concluded that Plaintiff had the following severe impairments: sprains and strains, and degenerative disc disease. *Id.* at 30–32.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 32.

Before moving to step four, the ALJ concluded that Plaintiff had the RFC to perform light work but with the following limitations:

>The claimant can stand and/or walk for 4 hours in an 8-hour workday, sit for six hours in an 8-hour workday, can never climb ladders, ropes, and scaffolds, or crawl, but can occasionally climb ramps and stairs, stop, kneel, and crouch. The claimant is occasionally abled to reach overhead bilaterally. The claimant is able to have occasional exposure to extreme cold, wetness, vibration, and to hazards such as unprotected heights and dangerous moving machinery such as chainsaws and jackhammers. The claimant must be able to alternate positions from sitting and standing at will.

*Id.* at 32–36.

At step four, the ALJ found that Plaintiff was unable to perform any PRW. *Id.* at 36.

At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in the national economy that Plaintiff could perform, namely as an assembler; inspector, hand packager; and textile assembler. *Id.* at 37–38. The ALJ then concluded that Plaintiff has not been under a disability from October 21, 2019, to the date of the decision. *Id.* at 38.

### III. ANALYSIS

#### A. The ALJ's RFC determination is supported by substantial evidence

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because she found Dr. Sinkov's opinion non-persuasive. ECF No. 11 at 6. According to Plaintiff, the ALJ's contention that Dr. Sinkov's opinion is not consistent with the objective medical evidence is mistaken because the record shows both normal and abnormal findings in strength, reflexes, and range of motion as well as bilateral cervical radiculopathy and possible lumbar radiculopathy. *Id.* But the Commissioner responds that the ALJ rightfully found Dr. Sinkov's opinion non-persuasive because objective testing showed that Plaintiff retained full or near-full muscle strength and could perform light work, which is inconsistent with Dr. Sinkov's finding that Plaintiff could only lift 10 pounds. ECF No. 13 at 5.

An ALJ's decision to discredit medical opinion evidence must be supported by substantial evidence. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). The ALJ must "articulate. . . how persuasive" she finds "all of the medical opinions" from each doctor or other source, 20 C.F.R. § 404.1520c(b), and "explain how [she] considered the supportability and

6

consistency factors" in reaching these findings. *Id.* § 404.1520c(b)(2). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant. . . objective medical evidence." *Id.* § 404.1520c(c)(1). Consistency means the extent to which a medical opinion is "consistent. . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* § 404.1520c(c)(2). A medical opinion is less persuasive when it is not consistent with the other evidence. *Id.*

Here, the ALJ noted that Dr. Sinkov opined that Plaintiff could not lift more than 10 pounds. ECF No. 9-1 at 35. She found that Dr. Sinkov's opinion was supported by his examination but found him non-persuasive because the 10-pound limitation was inconsistent with the record. *Id.* She concluded that the record at times showed mildly reduced strength, but a functional capacity evaluation indicated that Plaintiff was able to lift and carry weight consistent with the light exertional level, *i.e.*, 20 pounds occasionally and 10 pounds frequently. *Id.*

Plaintiff claims that contrary to the ALJ's finding, Dr. Sinkov's opinion is consistent with the record because the treatment record shows both normal and abnormal findings in strength, reflexes, and range of motion as well as bilateral cervical radiculopathy and possible lumbar radiculopathy both normal and abnormal findings of strength. ECF No. 11 at 6. Plaintiff is correct that the treatment record at times demonstrated reduced strength, limited range of motion, And both lumbar and cervical radiculopathy. *See, e.g.*, ECF Nos. 9-1 at 1034, 1185, 1229; 9-2 at 69, 143, 1010. However, the ALJ cited ample treatment records showing normal muscle strength, normal range of motion, and the ability to perform light work, which involves occasional lifting of 20 pounds and frequent lifting of 10 pounds. *See, e.g.*, ECF Nos. 9-1 at 1028, 1047, 1085, 1170; 9-2 at 79, 135, 902, 1010, 1012–24. One rational interpretation of such records is that a limitation to lifting 10 pounds is inconsistent with normal test results on a variety of metrics. *See Burch*, 400 F.3d at 679 (when the evidence will support more than one rational interpretation, the court must defer to the Commisioner's interpretation). Thus, the ALJ's holding that Dr. Sinkov's opinion is inconsistent with the record is supported by substantial evidence.

**B. The ALJ provided specific, clear, and convincing reasons for discounting Plaintiff's headache testimony**

The parties dispute whether the ALJ provided specific, clear, and convincing reasons in discounting Plaintiff's subjective symptom testimony. *Compare* ECF No. 11 at 7–10 *with* ECF No. 13 at 3–4.

In determining whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ engages in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.* (internal citation and quotation omitted). The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007)).

If the claimant satisfies the first step of the analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of their symptoms "only by offering specific, clear, and convincing reasons for doing so." *Id.* (internal citation and quotation omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (citation omitted); *Thomas,* 278 F.3d at 958 (requiring the ALJ to sufficiently explain why they discounted the claimant's symptom claims). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). That said, if the ALJ's credibility finding is supported by substantial evidence in the record, the Court may not engage in second-guessing. *Thomas*, 278 F.3d at 959.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. ECF No. 9-1 at 33. However, the ALJ

found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* The ALJ discredited Plaintiff's symptom testimony because it was inconsistent with the objective medical evidence. *Id.* at 33–34.

### 1. Objective Medical Evidence

The ALJ discounted Plaintiff's testimony because it conflicted with the medical record. ECF No. 9-1 at 33–34. The Commissioner argues that this was a sufficient reason for discrediting the testimony because Plaintiff's claims of being unable to lift a gallon of milk were undermined by objective assessments, and the record shows that Plaintiff gave conflicting testimony to doctors. ECF No. 13 at 3–4. But Plaintiff contends that her testimony is consistent with the record as a whole and that the ALJ simply cherry picked the record for inconsistencies. ECF No. 14 at 3–4.

"An ALJ cannot insist on clear medical evidence to support each part of a claimant's subjective pain testimony when there is no objective testimony evincing otherwise." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). In other words, "an ALJ cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence fully corroborating every allegation within the subjective testimony." *Id.* (internal quotation and citation omitted). But when objective medical evidence is inconsistent with a claimant's symptom testimony, the ALJ may weigh it as undercutting such testimony. *Id.* at 498.

Here, the ALJ first identified a direct contradiction in Plaintiff's testimony regarding her ability to lift certain items. At the hearing, Plaintiff testified that she could not lift a gallon of milk. *Id.* at 85–86. But a functional capacity evaluation by her physical therapist indicated that she was able to lift 20 pounds occasionally and 10 pounds more frequently, and several exams found that she had 5/5 upper strength. *Id.* at 1014, 1028, 1047, 1085, 1170; ECF No. 9-2 at 79, 135, 902, 1010, 1012–24. Though Plaintiff is correct that the ALJ should examine the record as whole, the functional capacity evaluation was performed just a year prior to her hearing testimony, *compare* ECF No. 9-1 at 85–86 *with id.* at 1014, and several exams across the

9

longitudinal record that indicated normal strength and range of motion also undermined this testimony.

Second, the ALJ cited conflicting statements that Plaintiff's doctors noted in the record. At a doctor's visit, despite reporting 10/10 pain and too much neck pain to work, Plaintiff stated that she wanted to return to work and requested a note permitting her to do so. *Id.* at 1169–71. Because the doctor noted that Plaintiff gave conflicting statements about her pain levels and her ability to work, the ALJ found that these records undermined Plaintiff's symptom testimony. *Id.* at 34.

In noting these inconsistencies, the ALJ properly discounted Plaintiff's testimony by "identifying specific discrepancies between her testimony and the objective medical evidence." *Smartt*, 53 F.4th at 498–99. This was therefore a specific, clear, and convincing reason for finding that Plaintiff's limitations were not as severe as she claimed. *Id.* at 499.

**C. The ALJ's step five finding is supported by substantial evidence**

At step five, the ALJ found an Assembler; an Inspector, Hand Packager; and a Textile Assembler. ECF No. 9-1 at 38. The Commissioner contends that the vocational expert's testimony was reliable and sufficient to support the ALJ's step five reasoning. ECF No. 13 at 5–6. But Plaintiff argues that the ALJ's decision was not supported by substantial evidence because she was limited to only occasional overhead reaching, she presented evidence that the jobs required more standing than allowed by her RFC, and her vocational evidence shows that jobs numbers are not as significant as the VE reported. ECF No. 11 at 11–15.

***1. Reaching***

Plaintiff contends that the ALJ limited her to overhead reaching but all three of the jobs the VE testified that Plaintiff could perform require frequent reaching. *Id.* at 11–12. Thus, Plaintiff argues, the ALJ failed to reconcile an obvious conflict between occasional overhead reaching and frequent reaching. *Id.* The Commissioner responds that the Ninth Circuit found that there was not an obvious and apparent conflict between occasional overhead reaching and frequent reaching. ECF No. 13 at 6.

An ALJ may rely on a vocational expert to provide testimony about jobs a claimant can perform despite his or her limitations. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012). If VE testimony conflicts with the requirements listed in the Dictionary of Occupational Titles ("DOT"), then the ALJ must ask the VE to reconcile the conflict. SSR 00-4P. An ALJ, however, is only required to reconcile an "apparent" or "obvious" conflict. *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016). This means that VE testimony must be at odds with the DOT's listing of job requirements that are essential, integral, or expected. *Id.*

In *Gutierrez*, the Ninth Circuit recognized that "[w]hile 'reaching' connotes the ability to extend one's hands and arms 'in any direction,' not every job that involves reaching requires the ability to reach overhead." *Id.* (internal citation omitted). Thus, the court found that overhead reaching was not an essential, integral, or expected requirement of a cashier position, and the conflict between the VE testimony and DOT was not obvious or apparent. *Id.*

Here, overhead reaching is not specifically discussed in the DOT job descriptions for Assembler; Inspector, Hand Packager; or Textile Assembler. DOT #706.687-010; #734.687-014; #559.687-074. Nor can an essential or expected requirement for overhead reaching be gleaned from their job descriptions. It therefore was not apparent that the DOT conflicted with the VE's testimony that an individual with the limitations the ALJ set forth in the hypothetical could perform these occupations. *Gutierrez*, 844 F.3d at 808.

**2. Sit/Stand**

Plaintiff argues that although the VE testified that all three jobs could be performed with a sit/stand option, Plaintiff identified other vocational evidence that suggests the jobs would require Plaintiff to stand or walk more than the four hours a day the ALJ limited her to. ECF No. 11 at 12–13. But the Commissioner asserts that the VE's testimony regarding each job's sit/stand requirements constitutes substantial evidence even though Plaintiff presented other evidence. ECF No. 13 at 6.

At the hearing, the ALJ asked the VE whether the three jobs could be performed with a sit/stand option. ECF No. 9-1 at 89. The VE testified that based on his experience, he reduced the

11

1  jobs numbers for each position by 50 percent to accommodate for Plaintiff's need for a sit/stand
2  option. *Id.* at 90. But Plaintiff presented vocational evidence to the Appeals Council suggesting
3  that each job would require her to stand or walk over four hours a day. *Id.* at 7.
4      As with any other inconsistency in record evidence, an ALJ may have a duty to address a
5  conflict in vocational evidence. *See Buck v. Berryhill*, 869 F.3d 1040, 1051–52 (9th Cir. 2017).
6  However, that duty arises only where the purportedly inconsistent evidence is both significant
7  and probative, as opposed to "meritless or immaterial." *Kilpatrick v. Kijakazi*, 35 F.4th 1187,
8  1193–94 (9th Cir. 2022).
9      Because Plaintiff did not present his evidence to the ALJ during or after the hearing, the
10 ALJ did not have any occasion to address the purported inconsistency between the VE's
11 testimony and Plaintiff's supposedly contrary evidence. The Court therefore must determine
12 whether Plaintiff's evidence is both significant and probative, which would require a remand to
13 the ALJ to reconsider her step-five finding that there were a significant number of jobs in the
14 national economy that Plaintiff could perform (based on the VE's testimony). *See White v.*
15 *Kijakazi*, 44 F.4th 828, 836–37 (9th Cir. 2022).
16     But here, Plaintiff does not argue that the new evidence is probative or significant. Nor
17 does she explain the source of the vocational data, the methodology used to reach such
18 conclusions, or who interpreted the data. *See Wischmann v. Kijakazi*, 68 F.4th 498, 506–07 (9th
19 Cir. 2023). Because Plaintiff failed to establish that her new evidence is both probative and
20 significant, the Court upholds the ALJ's determination. *Id.*
21                  ***3. Significant Numbers***
22     Plaintiff argues that the jobs numbers for assembler, inspector, and textile inspector were
23 not as significant as the VE reported. ECF No. 11 at 13–15. According to Plaintiff, the VE's use
24 of the Occupational Employment Quarterly for his job numbers was less reliable than Plaintiff's
25 proposed method, the Job Browser Pro. *Id.* The OEQ uses the equal distribution method, which
26 assumes that all DOT codes within an occupational group represent the same number of jobs,
27 whereas the JBP uses the occupational density method, which determines the industries in which

1  the DOT occupations exist then uses the Bureau of Labor Statistics to determine job numbers. *Id.*
2  But the Commissioner argues that Plaintiff's JBP evidence is neither probative nor significant
3  under Ninth Circuit Law. ECF No. 13 at 7–8.
4      In her decision, the ALJ noted Plaintiff's objection to the VE's use of the OEQ rather
5  than the JBP but found that the OEQ derives its data from three publications that the agency
6  takes administrative notice of being reliable job information. ECF No. 9-1 at 37–38. Plaintiff
7  then presented new vocational evidence to the Appeals Council after the ALJ issued her
8  decision. *Id.* at 11. But vocational evidence submitted to the Appeals Council cannot justify a
9  remand unless it is "both significant and probative, as opposed to 'meritless or immaterial.'"
10 *Wischmann*, 68 F.4th at 505 (quoting *Kilpatrick*, 35 F.4th at 1193–94). "[I]f the claimant's new
11 evidence is either not probative or not significant, the court must uphold the ALJ's
12 determination." *Id.* at 506.
13     Here, Plaintiff failed to show that the vocational evidence was produced using the same
14 methodology as the VE. *See id.* at 507. In fact, Plaintiff confirms that her numbers were
15 produced using a different methodology. Plaintiff also does not explain who produced the
16 outputs and whether said person had expertise in developing job numbers. *See id.* Plaintiff's
17 vocational evidence also does not indicate what queries were enter into the JBP program, what
18 variables were changed, or what filters were applied to the data. *See id.* Thus, this does not
19 constitute probative evidence. *Id.*
20     Because the vocational evidence is not probative evidence, it does not give rise to the sort
21 of inconsistency in the evidence that an ALJ is required to resolve. *Id.* (citation omitted). The
22 Court therefore need not decide whether the disparity between Plaintiff's job numbers and the
23 VE's job numbers is significant, and there is no need to remand. *Id.*
24 **IV.     CONCLUSION**
25     **IT IS THEREFORE ORDERED** that Plaintiff's Motion for Remand (ECF No. 11) is
26 **DENIED**.
27     **IT IS FURTHER ORDERED** that the Commissioner's Cross-Motion to Affirm (ECF
28

No. 13) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to enter judgment in favor of the Commissioner and close this case.

DATED this 28th day of October 2024.

_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE